**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>        - against -<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>        - against -<br><br>ERIC T. SCHNEIDERMAN, as successor to ANDREW M. CUOMO, Attorney General of the State of New York,  BART M. SCHWARTZ, as Receiver for ARIEL FUND LTD. and GABRIEL CAPITAL, L.P.,  DAVID PITOFSKY, as Receiver for ASCOT PARTNERS L.P.,  ASCOT FUND,  LTD., J. EZRA MERKIN; and GABRIEL CAPITAL CORPORATION,<br><br>                              Defendants. | Civil Action No.: **12 Civ 6733 (JSR)** |

**JOINT MEMORANDUM OF LAW IN OPPOSITION TO
TRUSTEE'S APPLICATION FOR ENFORCEMENT OF
AUTOMATIC STAY AND ISSUANCE OF PRELIMINARY INJUNCTION**

**Eric T. Schneiderman**
**Attorney General of the State of New York**
David N. Ellenhorn
Daniel Sangeap
Office Of The Attorney General
120 Broadway
New York, NY 10271
Telephone:  (212) 416-6388

*Attorneys for the People of the*
*State of New York*

**GOODWIN PROCTER LLP**
Daniel M. Glosband
Joseph A. Schwartz
Christopher Newcomb
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333

*Attorneys for David Pitofsky as Receiver for*
*Ascot Partners, L.P. and Ascot Fund, Ltd.*

**REED SMITH LLP**
James C. McCarroll
Jordan W. Siev
Michael J. Venditto
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450

*Attorneys for Bart M. Schwartz as Receiver for*
*Ariel Fund Ltd. and Gabriel Capital, L.P.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF THE CASE...........................................................................................3

      A.    THE NYAG AND SCHWARTZ ACTIONS .........................................................3

      B.    THE TRUSTEE'S FRAUDULENT CONVEYANCE CLAWBACK
           ACTION ...........................................................................................................4

      C.    THE TRUSTEE'S EFFORTS TO INTERFERE WITH THE NYAG
           ACTION ...........................................................................................................6

      D.    THE MERKIN SETTLEMENT AND INTERACTIONS WITH THE
           TRUSTEE.........................................................................................................7

ARGUMENT ...................................................................................................................8

I.     BOTH THE NYAG AND SCHWARTZ ACTIONS ARE NOT PROPERTY OF
      THE BLMIS ESTATE AND THUS NOT SUBJECT TO THE AUTOMATIC
      STAY ................................................................................................................8

II.    THE SUPREME COURT'S DECISION IN *GRUPO MEXICANO* PROHIBITS
      ISSUANCE OF THE SECTION 105(a) INJUNCTION ...................................11

III.   THERE IS NO SUBJECT MATTER JURISIDCITON TO ISSUE AN
      INJUNCTION..................................................................................................14

IV.   THE TRUSTEE CANNOT SATISFY THE REQUIREMENTS FOR A
      PRELIMINARY (OR PERMANENT) INJUNCTION.....................................16

V.    THE TRUSTEE IS BARRED BY LACHES DUE TO MULTI-YEAR DELAY
      AND RESULTING PREJUDICE.....................................................................19

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Barton v. Barbour,*
  104 U.S. 126 (1881) .................................................................................. 15

*Blanchard v. Landis,*
  No. 02-0053, 2002 WL 1933819 (S.D.N.Y. Aug 20, 2002) .................. 16

*Brennan v. Poritz (In re Brennan),*
  198 B.R. 445 (D.N.J. 1996) ................................................................... 13

*Church & Dwight Co. v. Clorox Co.,*
  840 F. Supp. 2d 717 (S.D.N.Y. 2012) ................................................... 16

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30 (2d Cir. 2010) .................................................................... 16

*FDIC v. Hirsch (In re Colonial Realty Corp.),*
  980 F.2d 125 (2d. Cir. 1993) .................................................................. 9

*Fischer v. American United Life Insurance Co.,*
  314 U.S. 549 (1942) ............................................................................... 15

*Freedom Holdings, Inc. v. Spitzer,*
  408 F.3d 112 (2d Cir. 2005) .................................................................. 18

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) ................................................................................. 12

*Grupo Mexicano  v. Alliance Bond Fund, Inc.,*
  527 US 308 (1999) .......................................................................... *passim*

*In re Adams,*
  212 B.R. 703 (Bankr. D. Mass. 1997) ................................................... 20

*In re Brentano's Inc.,*
  36 B.R. 90 (S.D.N.Y. 1984) ................................................................... 14

*In re Enivid, Inc.,*
  364 B.R. 139 (Bankr. Mass. 2007) ........................................................ 13

*In re General Motors Corp.,*
  407 B.R. 463 (Bankr. S.D.N.Y. 2009) ................................................... 13

*In re Lee,*
  465 B.R. 469 (W.D. Ky. 2012) ............................................................... 20

*In re Quigley Co. Inc.,*
  676 F.3d 45 (2d Cir. 2012) .................................................................... 14

*In re Reliance Reliance Acceptance Grp., Inc.,* 235 B.R. 548 (D. Del. 1999) ............................ 14

*In re VistaCare Group, LLC*,
    678 F.3d 218 (3d Cir. 2012) ................................................................. 15

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979) ................................................................... 18

*JSC Foreign Economic Association Technostroyexport
    v. International Development and Trade Services, Inc.*,
    295 F.Supp.2d 366 (S.D.N.Y. 2003) ............................................... 13, 17

*LaMonica v. N. of Eng. Protecting & Indemn. Ass'n (In re Probulk Inc.)*,
    407 B.R. 56 (Bankr. S.D.N.Y. 2009) ..................................................... 18

*Loveridge v. Pendleton Woolen Mills, Inc.*,
    788 F.2d 914 (2d Cir. 1986) ................................................................. 31

*Lurie v. Blackwell*,
    No. 98-35553, 2000 U.S. App. LEXIS 3360 (9th Cir. Mar. 2, 2000) ..................................... 16

*Matthews v. Rosene*,
    739 F. 2d 249 (7th Cir. 1984) ............................................................... 20

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
    337 F.3d 125 (2d Cir. 2003) ................................................................. 19

*Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*,
    14 F.3d 1507 (11th Cir. 1994) ............................................................... 12

*Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*,
    365 B.R. 401 (S.D.N.Y. 2007) ............................................................... 32

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.
    (In re Dairy Mart Convenience Stores, Inc.)*,
    351 F.3d 86 (2d Cir. 2003) ................................................................... 13

*Patco Energy Express, LLC v. Lambros*,
    353 Fed. Appx. 379 (11th Cir. 2009) ....................................................... 16

*Picard v. Fox (In re Bernard L. Madoff Inv. Securities LLC)*,
    429 B.R. 423 (Bankr. S.D.N.Y. 2010), aff'd, 848 F. Supp. 2d
    469 (S.D.N.Y. 2012), appeal docketed, No. 12-1645
    (2d Cir. argued Dec. 6, 2012) ............................................................... 23

*Picard v. HSBC*,
    454 B.R. 25 (S.D.N.Y. 2011) ................................................................. 10

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Securities LLC)*,
    454 B.R. 307 (S.D.N.Y. 2011) ............................................................... 10

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ............................................................... 17

*Picard v. Merkin*,
    2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) ............................................. 6

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bank. S.D.N.Y. 2010) .............................................. *passim*

*Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff
Inv. Securities LLC)*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011) ) ................................................ 10

*Picard v. Primeo Fund (In re Bernard L. Madoff Inv. Securities, LLC)*,
No. 12-115, 2012 U.S. Dist. LEXIS 78804 (S.D.N.Y. May 15, 2012) .................................... 9

*Picard v. Stahl  (In re Bernard L. Madoff Inv. Securities LLC)*,
443 B.R. 295 (Bankr. S.D.N.Y. 2011) *aff'd*, No. 11-2135, 2011 WL 7981599
(S.D.N.Y. Dec. 5, 2011) appeal docketed, No. 11-5421 (2d Cir. argued Jan. 25, 2013) ......... 10

*Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) ......................................................... 15

*Sealink Funding Ltd. v. Bear Stearns & Co.*,
No. 12-1397, 2012 U.S. Dist. LEXIS 145418 (S.D.N.Y. Oct. 9, 2012).................................... 15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011).................................................................................... 19

*Serio v. Black, Davis & Shur Agency, Inc.*,
2005 WL 3642217 (S.D.N.Y. Dec. 30 2005) ............................................................... 11 - 13

*SIPC v. Cheshier & Fuller LLP (In re Sunpoint Sec, Inc.)*,
262 B.R. 384 (Bankr. E.D. Tex. 2001) .................................................................................. 14

*Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*,
4 F.3d 1556 (10th Cir. 1993) ................................................................................................ 14

*Wildermuth v. Pious*,
21 A.D.2d 912, 251 N.Y.S.2d 837 (N.Y. Sup. Ct. App. Div. 1964) ...................................... 16

## Statutes

11 U.S.C. § 362.............................................................................................................. *passim*

11 U.S.C. § 541(a) ................................................................................................................. 8

11 U.S.C. § 542(a) ................................................................................................................. 9

15 U.S.C. § 78eee(b)(2)(A)..................................................................................................... 14

15 U.S.C. § 78eee(b)(2)(B).................................................................................................. 8, 10

28 U.S.C. § 1334.................................................................................................................... 14

28 U.S.C. § 1334(b) ............................................................................................................... 14

28 U.S.C. § 1334(e) ............................................................................................................... 14

## Rules

Fed. R. Civ. P. 64 .................................................................................................................. 11

Fed. R. Civ. P. 65 .................................................................................................................. 16

## Miscellaneous

Marc E. Hirschfield, "The Barton Doctrine: Still Kicking After 130 Years"
ABI JOURNAL, Aug. 2012, at 22. 64 ...................................................................................... 16

## PRELIMINARY STATEMENT

The Trustee for Bernard L. Madoff Investment Securities LLC (the "Trustee") has brought what he concedes is an "extraordinary" action against the New York Attorney General (the "NYAG") and the Receivers of several investment funds established, and once managed, by J. Ezra Merkin.  The Trustee claims that the NYAG's statutory enforcement action against Merkin (the "NYAG Action"), and the action by Bart M. Schwartz, as Receiver for Ariel Fund, Ltd. and Gabriel Capital, L.P. (the "Schwartz Action") are void, *ab initio,* because they purportedly were brought in contravention of the automatic stay provision of the Bankruptcy Code.  If the Trustee were right, the $410 million settlement made by Merkin, the NYAG and the Receivers would be a nullity, and the extensive litigation by the NYAG that brought about the settlement (on which hundreds of Merkin investors relied in not bringing their own actions) was a massive waste of time and effort.  Moreover, the Trustee seems to be taking the position that while the NYAG and Schwartz Actions are nullities, the fruits of the Merkin settlement should be provided to the Trustee, or held for his benefit, making the NYAG a claims agent for the Trustee.

There is no basis for the Trustee's demands.  The NYAG and Schwartz Actions could only possibly be subject to the automatic stay provision of the Bankruptcy Code if they impacted "property" of the BLMIS estate, or interfered with the Trustee's assertion and control of claims belonging to the Trustee.  The Bankruptcy Court has already held that Merkin's personal assets are not property of the BLMIS estate.  *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*), 440 B.R. 243, 271-72 (Bankr. S.D.N.Y. 2010).   And because the NYAG's and Schwartz's claims ***against Merkin*** have no bearing on the Madoff estate and are not similar to the claims the Trustee made against Merkin in the Bankruptcy Court they cannot be said to interfere with the Trustee's claims.

Even if Bankruptcy Code Section 362(a) applied, the Trustee's knowing and inexcusable conduct would estop him from obtaining relief.  For more than three years, while fully aware of the NYAG and Schwartz Actions – as well as some dozen actions and arbitration proceedings against Merkin by investors – the Trustee admittedly just sat, "watching" and did nothing.  Rather than seek a stay, the Trustee allowed the cases to be litigated at great expense to all concerned, and only sought to enjoin the NYAG and Schwartz after the $410 million settlement was achieved.  During the intervening three years, most of Merkin's investors refrained from personally suing Merkin, in reliance on the ability of the NYAG to obtain relief from which they would benefit.  If the Trustee were now to obtain an injunction nullifying the settlement, the NYAG's efforts would be for naught, and the investors would be severely prejudiced.

The Trustee contends that even if the automatic stay provision is inapplicable (as it is), the Court still should issue a 105(a) injunction, so that if he eventually prevails against Merkin he can distribute Merkin's assets to all of Madoff's victims.  There is no legal basis on which the Court could issue such an injunction.  First, such an injunction would contravene the Supreme Court's holding in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund Inc.*, 527 U.S. 308 (1999) prohibiting pre-judgment injunctions freezing a defendant's assets on the basis that the defendant may not be able to later satisfy a judgment in favor of the claimant seeking the injunction.  Second, the Trustee's inaction for three years affords a laches defense to his request for relief.  Third, any such injunction would actually defeat, not preserve, the ability to treat the Madoff victims "equally."  The investors who will benefit from the settlement with Merkin did not invest with Madoff; they invested with Merkin, and, as such, they have no relationship with the Trustee nor are they eligible for receipt of SIPC payments.  Although the Trustee professes concern for the Merkin investors, preventing them from receiving the fruits of settlement of the NYAG and

Schwartz Actions would unfairly place them in an unfavorable position relative to direct Madoff investors.

## STATEMENT OF THE CASE

**A.    THE NYAG AND SCHWARTZ ACTIONS**

### *People v. Merkin, et al.*

The NYAG began its investigation of Merkin in December 2008, a few weeks after Madoff's scheme was revealed.  Ten attorneys from the Investor Protection and Charities Bureaus, along with active participation from senior staff, worked on the investigation and preparation of the complaint.  Hundreds of Merkin's institutional, charitable and other investors were contacted by telephone, followed up by in-person interviews.  Sworn testimony was taken from Merkin and six current or former employees during the Martin Act investigation.  Thousands of documents were reviewed at this stage.  Declaration of David Ellenhorn ("Ellenhorn Decl.") ¶ 3.

On April 6, 2009, the NYAG commenced the NYAG Action in New York Supreme Court against J. Ezra Merkin and his wholly-owned company (together, the "Merkin Defendants"), alleging that they violated New York's Martin Act, Executive Law and Not-for-Profit Corporation Law.[1]  The NYAG obtained a freeze of the Merkin Defendants' assets, and receivers were appointed by the court.

The NYAG Action alleged that the Merkin Defendants made material misrepresentations and omissions when selling interests in the Merkin Funds to investors, concerning:  (i) the investment strategies Merkin intended to pursue, (ii) Merkin's role in managing the Funds' investments, and (iii) Merkin's intention to turn over substantially all of the moneys to Madoff and

---

[1]   *The People of the State of New York v. J. Ezra Merkin, et al.* (450879/2009) (Commercial Division, New York Supreme Court, New York County) (Justice Richard B. Lowe, III).

other unrelated investment managers.  The NYAG's Action also included claims of breach of fiduciary duty by the Merkin Defendants.

On February 8, 2010, Justice Lowe denied a motion to dismiss the NYAG Action. Ellenhorn Decl. ¶ 6 & Ex. A.  The court found no basis to dismiss any of the six NYAG causes of action, which were adequately supported.

On October 18, 2010, after the completion of extensive discovery including many depositions and investor interviews, the NYAG filed a motion for partial summary judgment. While the motion was pending, the parties reached a settlement.

### *Schwartz, et al. vs. Merkin et al.*

On September 16, 2010, Bart Schwartz, Receiver for the Ariel & Gabriel Funds, commenced an action against the Merkin Defendants in New York Supreme Court.  The Receiver alleged that (i) the Merkin Defendants had fiduciary duties of candor and disclosure to the Funds; (ii) the Merkin Defendants fraudulently concealed the truth and misrepresented the role and involvement of multiple undisclosed investment managers in the management of the Funds; (iii) the role of these managers violated internal limitations adopted by the Funds to ensure diversification and limit risk; and (iv) the Merkin Defendants collected exorbitant fees to which they were not entitled.[2]

## B.    THE TRUSTEE'S FRAUDULENT CONVEYANCE CLAWBACK ACTION

On May 7, 2009, the Trustee commenced an adversary proceeding against both the Funds and Merkin Defendants asserting actual and constructive fraudulent conveyance claims pursuant to the Bankruptcy Code and New York Debtor Creditor Law (the "Avoidance Action").

---

[2]  The Ariel & Gabriel Receiver's action is captioned *Bart M. Schwartz, et al. vs. J. Ezra Merkin et al.* (Index No. 651516/2010) (Commercial Division, New York Supreme Court, New York County) (Justice Richard B. Lowe, III).

However, unlike the state court actions by the NYAG and the Receiver, the Trustee's claims relate solely to repayments of principal by BLMIS to the Funds.[3]  As such, if the Trustee were to prevail, Merkin may only be accountable if the Funds cannot repay the monies withdrawn.

In the Avoidance Action, the Trustee seeks recovery of $33 million that Ariel and Gabriel withdrew from BLMIS, which represents less than 5% of over $300 million net aggregate cash that was invested and lost.  In addition, the Trustee seeks an accounting and immediate turnover of the withdrawals and disallowance of Ariel's and Gabriel's customer claims against BLMIS in the SIPA liquidation proceeding.  In claims against Ascot and the Merkin Defendants, the Trustee seeks to clawback approximately $500 million withdrawn by Ascot.  But, pursuant to this Court's rulings, the Trustee's maximum claims against Ascot are about $270 million.  And because any payment received by the Trustee from Ascot or Merkin would increase Ascot's losses and thus its claims in the Madoff action – the net value of the Trustee's claims further shrinks by the amount that he would have to return to Ascot.

On November 17, 2010, Judge Lifland dismissed Count I of the Avoidance Action Complaint, which sought an immediate turnover of funds and an accounting under section 542 of the Bankruptcy Code.  Judge Lifland ruled that the Trustee could not rely on section 542 of the Bankruptcy Code to immediately recover transfers "because they do not become 'property of the estate' unless and until they are recovered through a successful avoidance action."  *Picard v. Merkin*, 440 B.R. at 271.  The Bankruptcy Court sustained the balance of the claims.  On appeal,

---

[3]  Each of the Funds is a substantial "net loser" having invested more money with BLMIS than each withdrew.  In the cases of Ariel and Gabriel, each made a single withdrawal from BLMIS in an amount under $20 million to proportionally satisfy redemption requests from their own investors, whereas each of Ariel and Gabriel lost a net cash amount in excess of $160 million to BLMIS.  Ascot similarly is a substantial net loser.  Ascot asserts that its net losses were some $560 million, while the Trustee acknowledges that it is a net loser of at least $226 million.

the District Court affirmed.  *Picard v. Merkin*, No. 11-0012, 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) (Wood, J.).

The Trustee seeks to nullify a $410 million settlement and void an action brought by the NYAG under the Martin Act to pursue his claims where he does not have standing to bring Martin Act fraud claims or breach of fiduciary claims, and the amount he can actually recover is much less than that already achieved by the settlement.

## C.      THE TRUSTEE'S EFFORTS TO INTERFERE WITH THE NYAG ACTION

From April 2009 to August 2012, the Trustee was well-aware of the NYAG and Receiver actions as well as their settlement discussions; indeed, he was provided with an early version of the settlement agreement.  Ellenhorn Decl. ¶ 8.[4]  During this period, the Trustee made efforts to intimidate the NYAG and interfere with its Action.  Specifically, in November 2009 the Trustee informed the NYAG that he would seek to enjoin the NYAG Action unless the NYAG agreed to turn over some or all of any recovery from the Merkin Defendants.  The NYAG declined explaining why the Trustee could not enjoin the NYAG's law enforcement action against the Merkin Defendants.  However, the NYAG invited the Trustee to enter into negotiations to settle their differences.  After preliminary discussions, the Trustee failed to respond to the NYAG's invitation to continue negotiations.  Ellenhorn Decl.  ¶ 14.

Two years later, in late 2011, NYAG counsel received a telephone call from one of the Trustee's attorneys, who said he had heard that the NYAG was close to a settlement with Merkin. Once again the NYAG was threatened.  This time the Trustee threatened that he would sue to enjoin the settlement unless within 48 hours the NYAG agreed that the Bankruptcy Court would

---

[4]  A fuller statement of the adverse impact this Stay Action has on injured investors of the Merkin Defendants may be found in the attached Declaration of Bart M. Schwartz.

have exclusive jurisdiction over any disputes between the Trustee and the NYAG.  The NYAG rejected this demand, but expressed a willingness to discuss the overall situation with the Trustee. The Trustee's attorney responded that he would call in a day or two to set up a meeting, but never did.  Ellenhorn Decl. ¶ 15.

## D.       THE MERKIN SETTLEMENT AND INTERACTIONS WITH THE TRUSTEE

Beginning in early 2010, the Merkin Defendants, Receivers and the NYAG engaged in extensive settlement negotiations.  In December 2011, after more than 18 months of negotiation, a settlement agreement was executed by the Merkin Defendants, Receivers and the NYAG.  The Agreement was conditioned on Merkin and the Funds receiving releases from the Trustee.  To convince the Trustee to provide releases, the Trustee was given a copy of the December 2011 settlement agreement, and representatives of the NYAG met with counsel to the Trustee to explain the agreement.  Over the next four months the Receivers and the Merkin Defendants then sought to negotiate a settlement of the Avoidance Action.  These efforts included numerous meetings between the Receivers, and their counsel, and the Trustee's counsel, and full disclosure of the Merkin Defendants' assets, liabilities, and financial condition.  Ellenhorn Decl. ¶ 9.  While these negotiations were taking place, the parties asked Justice Lowe to withhold his decision on the NYAG's pending summary judgment motion, which the Court did.

After efforts to reach a resolution with the Trustee failed, the NYAG, the Receivers and the Merkin Defendants renegotiated their agreement to achieve a resolution that did not require releases from the Trustee.  On June 13, 2012, they entered into the final settlement.  The principal terms relating to the process for distribution of proceeds to investors remained unchanged in the final Settlement.  Ellenhorn Decl. ¶ 16.

Under the terms of the Settlement, Merkin will pay a total of $410 million largely as compensation for injured investors.  Most of the proceeds from the Settlement will be paid to

Merkin's victims.  These investors have not submitted claims to the Trustee, and are not eligible to receive a payment of up to $500,000 from SIPC that direct Madoff investors can receive.  The remainder of the funds will be utilized to defend against or settle claims by the Trustee against the Funds and Merkin, and pay the costs of the Receivers and the NYAG.

## ARGUMENT

## I.    BOTH THE NYAG AND SCHWARTZ ACTIONS ARE NOT PROPERTY OF THE BLMIS ESTATE AND THUS NOT SUBJECT TO THE AUTOMATIC STAY

The Trustee's Complaint seeks declaratory and injunctive relief on the theory that the settlement, the NYAG Action and the Schwartz Action "violate at least one of the Stay Orders and the automatic stay provisions under § 362(a) and 15 U.S.C. § 78eee(b)(2)(B)."  The SIPA provision, which is also the enabling provision for the Stay Orders, and the automatic stay provision only enjoin interference with assets or property owned, controlled or in the possession of BLMIS.  Judge Lifland has already ruled that until the Trustee is successful in his case against Merkin, Merkin's assets are not part of the estate.  Thus, there can be no automatic stay.

Recognizing this weakness, the Trustee seeks to enjoin the NYAG "from interfering with **_potential_** estate assets."  Trustee's Mem. at 22 (emphasis supplied).  But, the automatic stay provision of Section 362(a) only bars interference with existing, not potential, estate assets.  Such assets can consist of cash, causes of action, or any other asset.  11 U.S.C. § 541(a).  However, assets against which the Trustee has a litigation claim but has not obtained a judgment are not included:  "Thus, the Court is constrained to find that while the Trustee has stated *prima facie* claims for avoidance under the Code and the NYDCL, the current state of the law does not support

the requested expeditious turnover of the funds under section 542 of the Code"[5]  *Picard v. Merkin*, 440 B.R. at 271-73; *see also Picard v. Primeo Fund (In re Bernard L. Madoff Inv. Securities, LLC)*, No. 12-115, 2012 U.S. Dist. LEXIS 78804 *27 (S.D.N.Y. May 15, 2012) (citing *FDIC v. Hirsch (In re Colonial Realty Corp.)*, 980 F.2d 125, 131 (2d. Cir. 1993)).

Assets subject to the automatic stay also do not include causes of action prosecuted by parties unrelated to the debtor (Madoff) that cannot be prosecuted by the Trustee, such as the claims asserted in the NYAG and Schwartz Actions.  The Trustee argues that "[b]y settling these actions, the Defendants are attempting to exercise control over causes of action that belong to the Trustee, which are property of the estate."  Trustee's Mem. at 27.  But the Trustee cannot support this bold assertion.  The only support offered are conclusory allegations that "[t]he Settlement and the underlying actions are derivative of the Trustee's claims to the extent that they are based on the same facts, seek the same funds from the same defendants, and are inextricably intertwined with the Trustee's claims," and that "the Settlement purports to resolve claims that are inextricably intertwined with the Trustee's claims, and threatens to allow certain indirect investors of BLMIS to recover estate property."  Trustee's Mem. at 22, 34.  In fact the NYAG's claims are based on different facts, theories and obligations.  Indeed, NYAG brings claims that the Trustee can never bring.

The NYAG alleged that in violation of the Martin Act, the Merkin Defendants (not Madoff) fraudulently sold interests in his Funds to investors.  They made misrepresentations and

---

[5]  Section 542 of the Bankruptcy Code provides that "an entity ... in possession, custody, or control, during the case, of [property of the estate] ... shall deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. § 542(a).  In the Avoidance Action, the Bankruptcy Court rejected the Trustee's contention that SIPA section 15 U.S.C. § 78fff–2(c)(3) modified section 542 to permit recovery of prepetition transfers upon a *prima facie* showing that the transfer is "voidable or void," without an avoidance action.

omissions concerning Merkin's role in managing the Funds' investments, and his intention to turn over substantially all of the capital he raised to Madoff and other investment managers.  The NYAG also included claims for breach of fiduciary duty.  The Trustees claims are not based on these facts and he has no standing to pursue such claims.  Nor can the Trustee bring Martin Act or fiduciary breach claims.  Because the Trustee could never bring these claims, the NYAG Action cannot possibly be deemed property of the BLMIS estate.

The cases cited by the Trustee are inapposite.  In two of the cases, the claims that were stayed were identical to those being pursued by the Trustee.  *See Picard v. Fox (In re Bernard L. Madoff Inv. Securities LLC)*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *appeal docketed*, No. 12-1645 (2d Cir. argued Dec. 6, 2012); *Picard v. Stahl (In re Bernard L. Madoff Inv. Securities LLC)*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 11-2135, 2011 WL 7981599 (S.D.N.Y. Dec. 5, 2011), appeal docketed, No. 11-5421 (2d Cir. argued Jan. 25, 2013).  In a third case, the defendant was found to be directly interfering with the Trustee's action.  *Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Securities LLC)*, 460 B.R. 106, 123 (Bankr. S.D.N.Y. 2011) (finding entity's Cayman Action "particularly vexatious" because it "forc[ed] the Trustee to litigate the same issues in both this Court and the Cayman Action.").  In contrast, the NYAG Action asserts claims that are distinct from the Trustee's Avoidance Action claims and the Trustee lacks standing to bring the claims asserted by the NYAG.  *See Picard v. JPMorgan Chase & Co.(In re Bernard L. Madoff Inv. Securities LLC)*, 454 B.R. 307, 316 (S.D.N.Y. 2011) and *Picard v. HSBC*, 454 B.R. 25 (S.D.N.Y. 2011) (each dismissing Trustee's suit for lack of standing to prosecute state law claims reserved to creditors).

Recognizing that the automatic stay does not apply to the NYAG or Schwartz Actions, the Trustee seeks to give the impression that SIPA § 78eee(b)(2)(B) – or some other, unidentified

SIPA provision – expands the scope of Section 362(a).  But, the Trustee does not cite a single precedent for expanding the applicability of the automatic stay – let alone the far-reaching expansion that would be necessary to support the injunction the Trustee seeks.

Because neither the settled claims nor the monies that will be used to make payments under the settlement are property of the BLMIS estate, nothing about the settlement violates the automatic stay, or any provision of SIPA, and the injunction motion must fail.[6]

## II. THE SUPREME COURT'S DECISION IN *GRUPO MEXICANO* PROHIBITS ISSUANCE OF THE SECTION 105(a) INJUNCTION

### A. Section 105(a) Does Not Trump Supreme Court Precedent Prohibiting Mid-Litigation Injunctions Against the Transfer of Funds

The Trustee also seeks a preliminary injunction under Section 105(a) because he "and his counsel are concerned that the Merkin Defendants and the Merkin Funds will imminently dissipate their assets by making payments pursuant to the Settlement."  Trustee's Mem. at 5.  Because these assets are not property of the BLMIS estate and the automatic stay does not apply, the only theoretically available remedy for such an alleged dissipation of assets would be a prejudgment attachment under Fed. R. Civ. P. 64.

The Trustee seeks to cloak his request as an application for a 105(a) injunction, but the Supreme Court has made clear that a preliminary injunction cannot be employed as a substitute for an attachment.[7]  Rule 64 governs attachments and includes state-law remedies for seizure of

---

[6]  Even if the stay applied, Section 362 provides an exception for regulatory enforcement proceedings, even against a debtor.  *See* 11 U.S.C. §362(b)(1).  While the NYAG's claims are not against BLMIS, if the Court were to extend the stay to cover property that is the subject of the NYAG Action on the grounds that it was property of the BLMIS estate, it would follow that the § 362(b)(1) exemption would apply co-equally.

[7]  *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05-15, 2005 U.S. Dist. LEXIS 39018, *15 (S.D.N.Y. Dec. 30, 2005) ("When a plaintiff in federal court believes that his adversary is

*Note continued on following page.*

property to ensure the satisfaction of any judgment that is ultimately entered.  *Serio,* 2005 U.S. Dist. LEXIS 39018, at *15.  However, the Trustee could not satisfy – and does not suggest otherwise – the prerequisites for such an attachment.

In *Grupo Mexicano*, the Supreme Court severely limited the use of mid-litigation injunctions to prevent the transfer of assets.  The Court held that, in an action for money damages, the district courts cannot freeze the defendant's assets prior to a final adjudication of the plaintiff's claims unless the plaintiff has a lien or other equitable interest in the assets to be sequestered. *Grupo Mexicano*, 527 U.S. at 318-33.  Here, the Trustee concedes that he wants such a mid-litigation injunction precisely to ensure that he can enforce the judgment he hopes to obtain if he succeeds on his fraudulent conveyance claims against the Merkin Defendants.  *Grupo Mexicano*, prohibits such a request.  Moreover, the Trustee cannot argue that his claims warrant special protection.  The Supreme Court has held that fraudulent conveyance claims are not equitable bankruptcy claims but "quintessentially suits at common law," which closely approximate contract claims for damages.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989).

The injunction motion is premised on the fallacy that the Trustee is entitled to freeze Merkin's assets based on the possibility that he prevails on his claims against the Funds and Merkin and that the Merkin Defendants are unable to satisfy a money judgment.  This runs right into *Grupo Mexicano*, which held "a party seeking a money judgment may not obtain a freeze of the defendant's assets based simply on the prospect that the defendant may otherwise be unable to

---

*Continued from previous page.*

dissipating, diverting or hiding assets and that this activity is intended to prevent, or will have the effect of frustrating, enforcement of a judgment that has not yet been entered, he is typically required to look to the terms of Fed. R. Civ. P. 64 for relief.").  A motion seeking such relief should be treated as an attachment motion, even if it is erroneously labeled as a motion for a preliminary injunction.  *See Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1515 (11th Cir. 1994).

satisfy the judgment that will later be entered." *See also Serio*, 2005 U.S. Dist. LEXIS 39018, *19

(citing *Grupo Mexicano*, 527 U.S. at 333).  Courts in this district have further clarified that,

pursuant to *Grupo Mexicano,* they are without authority to grant a preliminary injunction simply

to assure a plaintiff that a judgment can be recovered.  *See JSC Foreign Economic Association

Technostroyexport v. International Development and Trade Services, Inc.*, 295 F. Supp. 2d 366,

389 (S.D.N.Y. 2003) ("Because the plaintiff's action is one for money damages, and because the

plaintiff asserts no lien or equitable interest in the assets it seeks to restrain, the Court lacks the

power to grant the preliminary injunction it seeks.").

　　　　Nothing about Section 105(a) authorizes a court applying the Bankruptcy Code "'to create

substantive rights that are otherwise unavailable under applicable law, or constitute a roving

commission to do equity.'"  *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In

re Dairy Mart Convenience Stores, Inc.)* , 351 F.3d at 92; *see also In re General Motors Corp.*,

407 B.R. 463 (Bankr. S.D.N.Y.  2009) ("Decisions of the Second Circuit make it clear that, even

with the presence of section 105(a), bankruptcy judges are not free to do whatever feels right.").

As the court noted in *In re Enivid Inc.*:  "The right of the parties to pursue the same assets and

individuals is not, in and of itself, a cognizable theory in support of an injunction."  *In re Enivid

Inc.,* 364 B.R. 139, 157 (Bankr. Mass. 2007).  The Trustee offers no support why Section 105 of

the Bankruptcy Code should trump well-settled Supreme Court and other precedent.

**B.**　　　**Section 105(a) Does Not Provide a Separate Basis For an Injunction**

　　　　The Trustee next resorts to arguments seeking to expand the power of 105(a).  But

enjoining government police power actions directed at debtors are at best a "rare remedy,

appropriate only in exigent circumstances where the state regulatory action seriously threatens the

bankruptcy process."  *Brennan v. Poritz  (In re Brennan)*, 198 B.R. 445, 451 (D. N.J. 1996).  The

Trustee has not cited, and the Defendants' research has not revealed, a single case where a 105(a)

injunction was granted to prevent an exercise of a governmental police and regulatory powers against a **_non-debtor_**.

Further, even with respect to private lawsuits, "it is an extraordinary exercise of discretion to use [Section 105(a)] to stay a third party action not involving the debtor."  *In re Brentano's Inc.,* 36 B.R. 90, 92 (S.D.N.Y. 1984).

## III.   THERE IS NO SUBJECT MATTER JURISDICTION TO ISSUE AN INJUNCTION

### A.   No Jurisdiction Under 28 U.S.C. § 1334(b) Where There is No Direct Effect On the Bankruptcy Estate

Because the NYAG and Receiver actions do not implicate property of the BLMIS estate, the Trustee's Complaint is reduced to an attempt to stay an action by one third party against another that has no direct effect on the BLMIS case.[8]  Consequently, the Complaint falls outside of the scope of bankruptcy jurisdiction granted to the district courts by 28 U.S.C. § 1334(b), which is limited to "… original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in **or related to cases under title 11**." (emphasis added).[9]  Controlling authority in the Second Circuit, holds that courts have "related to" jurisdiction to enjoin an action by one third party against another only when there is a **direct** effect on the *res* of the bankruptcy estate.  *In re Quigley Company, Inc*., 676 F.3d 45 (2d Cir. 2012); *see also Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

---

[8]  Because no property of the estate is involved, 28 U.S.C. § 1334(e) (granting jurisdiction over all property of the debtor and the estate) does not supply the necessary jurisdiction.  Tellingly, the Trustee never claims jurisdiction under Section 1334(e).

[9]  The District Court has the same jurisdiction over a SIPA proceeding as it would have over a case arising under the Bankruptcy Code.  15 U.S.C. § 78eee(b)(2)(A).   Thus, the statutory scheme governing bankruptcy court subject matter jurisdiction in 28 U.S.C. § 1334 is applicable to SIPA proceedings.  *See, e.g., Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1564 (10th Cir. 1993); *SIPC v. Cheshier & Fuller LLP (In re Sunpoint Sec., Inc.)*, 262 B.R. 384, 393-94 (Bankr. E.D. Tex. 2001).

Quite simply, the Trustee asserts that consummation of the settlement ***might*** leave the Merkin Defendants unable to satisfy any judgment that he ***might*** eventually obtain.  This is too speculative and attenuated to confer jurisdiction under Section 1334(b).  *See Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12-1397, 2012 U.S. Dist. LEXIS 145418, *8 (S.D.N.Y. Oct. 9, 2012) ("'any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction'").

As the Court lacks subject matter jurisdiction, the Injunction Motion cannot be granted, and the Complaint must be dismissed.

**B.      The *Barton* Doctrine Deprives the Court of Jurisdiction**

The *Barton* Doctrine deprives a federal court of subject matter jurisdiction to entertain claims against a court-appointed receiver without leave of the appointing court.[10]

> Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts.  Such possession of the *res* by the state court disenabled the federal court from exercising any control over it…. The appropriate exercise of the discretion of a federal court of equity may require it to refuse even to adjudicate rights in specific property if the state court has already undertaken such a determination.  Furthermore, the federal court may not "seize and control the property which is in the possession of the state court" nor interfere with the state court or its functions.

*Fischer v. American United Life Ins.*, 314 U.S. 549, 554-55 (1942).

Here, a New York State Court has already exercised and possesses jurisdiction over Merkin's assets.  By entering the Receivership Orders, including the injunctive provisions

---

[10]   The *Barton Doctrine* requires that, prior to suing a court-appointed receiver, the plaintiff must first seek leave of the court that issued the receiver's appointment.  *Barton v. Barbour*, 104 U.S. 126 (1881).  "Absent such permission, no other court would have jurisdiction to hear the suit."  *In re VistaCare Group, LLC*, 678 F.3d 218, 225 (3d Cir. 2012).

contained therein, the State Court asserted its jurisdiction over the Merkin Defendants and their assets.[11]

The Trustee was free to seek relief from the State Court, but elected not to do so. Instead, he sought relief from the Bankruptcy Court. Because the Trustee commenced this proceeding in circumvention of the State Court's jurisdiction over Merkin's assets, the proceeding must be dismissed for lack of subject matter jurisdiction. *See Blanchard v. Landis*, No. 02-0053, 2002 WL 1933819, *2 (S.D.N.Y. Aug 20, 2002); *Patco Energy Express, LLC v. Lambros*, 353 Fed. Appx. 379, 382 (11th Cir. 2009); *Lurie v. Blackwell*, No. 98-35553, 2000 U.S. App. LEXIS 3360 (9th Cir. Mar. 2, 2000); *Wildermuth v. Pious*, 21 A.D.2d 912, 913, 251 N.Y.S.2d 837, 838-39 (N.Y. Sup. Ct. App. Div. 1964); *see also* Marc E. Hirschfield, "The Barton Doctrine: Still Kicking After 130 Years", ABI JOURNAL, Aug. 2012, at 22.

## IV.   THE TRUSTEE CANNOT SATISFY THE REQUIREMENTS FOR A PRELIMINARY (OR PERMANENT) INJUNCTION

To obtain a preliminary injunction, Rule 65 requires that the Trustee demonstrate: (a) (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation, and (b) a balance of hardships tipping decidedly in his favor, and (c) irreparable harm. *Church & Dwight Co. v. Clorox Co.*, 840 F. Supp. 2d 717, 720 (S.D.N.Y. 2012) (quoting *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

---

[11]   The Ariel & Gabriel Receivership Order contained an express prohibition, *inter alia*, against any party taking any action "without the express written agreement of the Receiver, which would . . . [i]nterfere with or harass the Receiver, or interfere in any manner with the jurisdiction of this Court over the Receivership Estates."

**A.      The Trustee Cannot Demonstrate a Likelihood of Success on the Merits**

The Trustee has not demonstrated any likelihood of success on the merits in this action. And, the Complaint does not present sufficiently serious questions going to the merits to warrant a preliminary injunction.[12]

The Trustee asserts he needs an injunction because he "does not believe that the Merkin Defendants can satisfy both the amount purportedly due under the settlement and the over $500 million the Trustee seeks in his litigation."  (Complaint at ¶ 68).  But this is __*not*__ a legitimate basis for granting of an injunction because, even if the Trustee is right, precedent expressly bars granting a preliminary injunction on this basis.  *See Grupo Mexicano*, 527 U.S. at 333; *see also JSC Foreign Economic Association,* 295 F.Supp.2d at 389; *In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 561 (D. Del. 1999) ("The difficulty the Debtors have had is in identifying a right to the relief; that is, they have been unable to identify a legal principle that stands for the proposition that the Estate's claims for relief should take precedence over the Shareholders' claims.  Absent a right to relief, they have no right to an injunction.  And without the probability of success on the merits of their claims for relief, they have no right to a preliminary injunction.").

**B.      The Trustee Cannot Demonstrate Any Cognizable Irreparable Harm**

Even if the Trustee could show success on the merits, which he cannot, he cannot show he would be irreparably harmed.  The Trustee asserts that if the $410 million settlement is implemented, Merkin will be left with insufficient assets to satisfy the Trustee's claims.  Leaving aside the speculative nature of that assertion, the law simply does not recognize this as an

---

[12]  This Court's decision in *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) sets a major obstacle to the Trustee's avoidance claims. In that decision, the Court concluded that the Trustee could recover net profits paid during the two years prior to bankruptcy "simply by showing that the defendants failed to provide value for those transfers," but the recovery of any return of principal during that same period required proof of an absence of good faith.  *Id*. at 456.

"irreparable injury." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). The Trustee is seeking an advantage in collecting a potential money judgment he may (or may not) obtain against the Merkin Defendants. A plaintiff has no legal right to obtain such an advantage over other claimants and the law therefore does not recognize this as an irreparable injury. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979).

The Trustee misapplies cases holding that it is not necessary to prove irreparable harm "if the requested injunction is necessary in order to preserve the jurisdiction of the Bankruptcy Court, especially if the automatic stay is at issue." *LaMonica v. N. of Eng. Protecting & Indemn. Ass'n (In re Probulk)*, 407 B.R. 56, 62 (Bankr. S.D.N.Y. 2009); *see also Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (S.D.N.Y. 2007) (holding the threat must be "imminent, substantial and irreparable"). This narrow bankruptcy exception does not apply because there is no threat to the Bankruptcy Court's jurisdiction. The fact that the Merkin Assets and the claims asserted in the NYAG and Schwartz Actions are not property of the BLMIS estate is fatal to the Trustee's claim.

## C. The Public Interest Supports Denial of the Injunction, and the Balance of Harms Weighs Against an Injunction

Granting the injunction would interfere with three significant public interests: first, allowing the laws of New York to be enforced by state officials charged with their enforcement; second, the public interest in allowing parties to consensually resolve their disputes, rather than continuing to litigate them; and third, allowing investors to receive relief for harms committed against them. The Trustee does not argue to the contrary. Rather, he suggests that his mission to maximize the funds available for distribution to the direct victims of the Madoff fraud negates law enforcement or remedial action against Merkin. *See* Trustee's Mem. at 38 ("The investors in the

Merkin Funds must 'wait their turn behind the trustee …'").  Quite understandably, there is no such public interest.

Moreover, the relief sought by the Trustee would not only prevent investors in the Merkin Funds from receiving recovery from Merkin's assets for the injuries they suffered, but it would effectively deprive them of any forum in which to assert their claims.  The Bankruptcy Court has already found that they cannot participate in payments from the SIPC fund.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).  If the NYAG's action is void, claims brought by investors may also be stayed the Trustee.  The result of this action would be to permanently subordinate the interests of the Merkin investors to the interests of direct Madoff investors.

Thus, if the injunction were granted:  (i) the NYAG would be enjoined from performing his statutory duties; (ii) the Receivers would be prevented from performing the mandate they have from the State Court to liquidate the Merkin Funds; (iii) the Merkin Defendants would be prevented from resolving litigations over which this Court has no control; and (iv) the Merkin investors would lose the benefit of the NYAG settlement.  The hardship encompassed in these four factors outweighs any hardship claimed by the Trustee.

## V.   THE TRUSTEE IS BARRED BY LACHES DUE TO MULTI-YEAR DELAY AND RESULTING PREJUDICE

A party seeking to enforce a claim must act promptly, and cannot engage in unreasonable delay that causes prejudice to his adversary.  *See Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003).  Because of (i) the Trustee's unreasonable delay in seeking to enjoin the NYAG action, (ii) the resulting prejudice to both the NYAG and the Receivers, who expended significant resources in the interim, and (iii) prejudice to the Merkin Funds investors, who refrained from bringing separate actions in reliance on the NYAG action, the Trustee's requests for any stay or injunction are barred by laches and estoppel.  The Trustee waited over

three years to enforce an automatic stay against the NYAG Action.  The NYAG filed its case in April 2009 and the Trustee filed his complaint in August 2012.  In situations where a party's multi-year delay in seeking to enforce the automatic stay had an unfair impact, courts have found such tardy claims barred by laches.  When a plaintiff delayed a challenge to state court jurisdiction on the basis of the automatic stay for almost three years, the court found the late attempt to invoke the stay, without reasonable explanation, barred by laches.  *See Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984) (holding "[a] bankruptcy court, as a court of equity, nevertheless must be guided by equitable principles in exercising its jurisdiction[,]" and finding laches where "Matthews unreasonably and inexcusably delayed asserting his claim against state court jurisdiction to the bankruptcy court and that Rosene would be seriously prejudiced if the state court order is voided. . . . A 33-month delay rarely can be reasonable unless excused."); *see also In re Lee*, 465 B.R. 469 (W.D. Ky. 2012) (finding laches after ***two year delay*** in seeking enforcement of automatic stay); *In re Adams*, 212 B.R. 703, 712 (Bankr. D. Mass. 1997) ("While the automatic stay is normally stringently enforced, '[a] bankruptcy court, as a court of equity, nevertheless must be guided by equitable principles in exercising its jurisdiction[,]'" finding laches after ***19 month delay*** in invoking the automatic stay).

There is no doubt that the NYAG, the Receivers and the investors have been prejudiced by the Trustee's delay.  For over three years, the NYAG expended significant resources in pursuing and resolving the action against Merkin.  A total of ten NYAG attorneys completed the initial pre-complaint investigation, leading to the filing of the complaint in April 2009.  Seven NYAG attorneys invested significant portions of their time over three years in pursuing the action from filing to settlement.  Hundreds of Merkin investors were contacted and interviewed during the initial investigation.  Similar interviews were conducted to generate investor affidavits in preparation for the NYAG's summary judgment motion and the opposition to Merkin's cross-

motion.  Hundreds of thousands of pages of documents were reviewed.  After giving sworn

testimony during the pre-complaint investigation, Merkin was deposed twice, for a total of four

days.  Six of Merkin's employees and former employees were deposed.  Investment managers to

whom Merkin outsourced investment responsibilities, other than Madoff, were interviewed and

examined, as were fund managers with whom Merkin had done business.  The parties engaged in

motion practice concerning multiple discovery disputes, on which the NYAG prevailed.

Throughout this entire period, the Trustee never filed a motion for a stay.  Indeed, it could have

sought to stay payment of certain judgments to investors who prevailed against or settled with

Merkin in individual suits.  The Trustee never took such action.[13]  The Trustee's unreasonable

delay also impacted hundreds of Merkin's investors who relied on the NYAG's action.  Schwartz

Decl., ¶¶ 12-15.  While the primary purpose of the NYAG's effort is to protect the public by

deterring and punishing fraud, he also sought to recover funds for investors.  Investors first

became aware of the NYAG's efforts when they were contacted during the pre-complaint

investigation.  Ellenhorn Decl., ¶ 7.  In response to numerous inquiries, although never

guaranteeing a particular result, the NYAG responded to investor queries confirming that a

significant portion of any moneys obtained from Merkin would likely be returned to defrauded

investors.  Investors were also contacted directly by NYAG attorneys during the preparation of the

motion for summary judgment, including many who were not reached during the initial

investigation.  Ellenhorn Decl., ¶ 7.  The Receivers also updated investors concerning the progress

made by the NYAG, as well as concerning the action Schwartz had brought.  Ellenhorn Decl. ¶ 12.

---

[13]  Merkin also expended millions of dollars in defending the actions brought by the NYAG and
Schwartz, which might otherwise have been available to investors.

Finally, by moving to stay the payment of claims to certain investors, the Trustee's action seeks to divide the Merkin investors into two classes – those that pursued individual actions against Merkin and have already been paid and those that awaited the NYAG Action.

The Trustee has offered no justification for his delay.  At the November 19, 2012 hearing on the motion to withdraw the reference, in response to the Court's inquiry concerning the delayed effort to enforce the automatic stay, counsel for the Trustee acknowledged the "risk" the Trustee took in waiting, and offered two rationalizations for the delay.  First, the Trustee did not move because of his heavy work load:

> I would submit to your Honor that we have an obligation to muster our resources in such a way we could engage literally -- as your Honor knows, we have quite a few litigations. We can have literally dozens of applications for injunctive relief.  What we decided . . . .  Now, we run a risk. I'm not suggesting to your Honor that was carte blanche to bring whatever we thought we should, but at the same time, we were mustering our assets to do them in a way that made sense, made sense to us.

Transcript of hearing dated November 19, 2012 ("Tr. Nov. 19, 2012") at pp.4-5.

Conceding that his workload did not interfere with his ability to bring a stay motion, counsel then claimed that the Trustee's calculation of whether to bring a motion was influenced by when he might be prejudiced by the progress of the NYAG's action:

> So, we were just sitting, watching that, and at some point, when the assets might become imperiled, imperiled, which they might be at this point obviously, but we were notified of this settlement, we then moved promptly at that point -- last August I guess it was -- seeking the injunctive relief that is the subject of this motion to withdraw the reference.

Tr. Nov. 19, 2012 at p. 6.

> But here's the other issue, though, your Honor, and that is, there's really no prejudice to us at that point, no money was leaving Mr. Merkin, it wasn't going anywhere, it wasn't going to leave until some action took place.

Tr. Nov. 19, 2012 at p. 35.

Focusing on the lack of prejudice to the Trustee is the direct opposite of the test for laches, namely, whether the delay caused prejudice to the party against whom the automatic stay is aimed,

and others hurt by the delay.  The Trustee has no justification for the three year delay.  Imposing

the stay now would cause irreparable and irrevocable prejudice to the NYAG, the Receivers, and

the Merkin investors and should thus be denied.

## CONCLUSION

For the reasons set forth above, the Injunction Motion must be denied.

Dated:  January 25, 2013
        New York, New York


**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW**
**YORK**

By:  /s/David N. Ellenhorn_____
     David N. Ellenhorn
     Daniel Sangeap
Office Of The Attorney General
120 Broadway
New York, NY 10271
Telephone:  (212) 416-6388

*Attorneys for the People of the State of New*
*York*


**GOODWIN PROCTER LLP**

By:  /s/Daniel M. Glosband_____
     Daniel M. Glosband
     Joseph A. Schwartz
     Christopher Newcomb
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333

*Attorneys for David Pitofsky as Receiver for*
*Ascot Partners, L.P. and Ascot Fund, Ltd.*


**REED SMITH LLP**

By:  /s/James C. McCarroll_____
     James C. McCarroll
     Jordan W. Siev
     Michael J. Venditto
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450

*Attorneys for Bart M. Schwartz As Receiver*
*For Ariel Fund Ltd. and Gabriel Capital, L.P.*