UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff,<br><br> - against -<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Debtor.<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>         Plaintiff,<br><br> - against -<br><br>ERIC T. SCHNEIDERMAN, as successor to ANDREW M. CUOMO, Attorney General of the State of New York; BART M. SCHWARTZ, as Receiver for ARIEL FUND LTD. and GABRIEL CAPITAL, L.P.; DAVID PITOFSKY, as Receiver for ASCOT PARTNERS L.P., ASCOT FUND, LTD.; J. EZRA MERKIN; and GABRIEL CAPITAL CORPORATION,<br><br>         Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No.: **12 Civ 6733 (JSR)** |

**DECLARATION OF DAVID N. ELLENHORN IN SUPPORT
OF DEFENDANTS' JOINT SUR-REPLY MEMORANDUM IN OPPOSITION TO
TRUSTEE'S APPLICATION FOR ENFORCEMENT OF THE AUTOMATIC STAY
AND ISSUANCE OF A PRELIMINARY INJUNCTION**

DAVID N. ELLENHORN, an attorney duly admitted to practice in the State of New York, and a member of the bar of this Court, hereby declares the following to be true and correct, under penalty of perjury:

1. I am a Senior Trial Counsel in the Office of the Attorney General of the State of New York. I have been in charge of the AG's action against J. Ezra Merkin, and his solely-owned management company, Gabriel Capital Corp. ("Merkin"), since inception. I submit this affirmation to clarify certain matters concerning the settlement (the "Agreement") between the NYAG, J. Ezra Merkin, and the Receivers of the Merkin funds, and in response to the affirmation of David Sheehan counsel for the Trustee dated February 21, 2013.

2. Preliminarily I note that the substantive terms of the Agreement are not subject to the Court's approval and are not directly relevant here. However since the Trustee has seen fit to belittle the agreement and misstate some of its provisions a response is in order.

3. In substance the settlement is a major accomplishment for the NYAG and the Receivers and will be of great benefit to the victims of the Merkin 's wrongdoing. As the Court is aware under the Agreement Merkin will pay $410 million of his personal assets to settle the claims of the NYAG and receivers. Mr. Sheehan suggests that this amount is "illusory". That is absurd. A small portion of the $410 has been set aside to pay the administrative costs of the settlement, an obvious necessity, and $5 million is earmarked to pay the costs of the NYAG's expensive three year litigation against Merkin (an amount that represents just over one percent of the settlement amount). Such a payment is often a part of settlements made by the NYAG as well as other governmental agencies. We note that the Trustee has already received far more than that amount in connection with his own action against Merkin which, to date, has not yielded any

1

recovery. All of the remaining settlement funds, out of the $410 million, will be used to compensate victims of Merkin's wrongdoing. Not one penny will revert to Merkin.

4. Mr. Sheehan notes that a portion of the $410 million has been set aside to fund and settle certain remaining or potential lawsuits against Merkin that are not a part of this settlement. That is true, required, and appropriate. The largest, indeed the only significant such matter is the Trustee's own fraudulent conveyance claim against the Merkin Funds and Merkin. Merkin originally insisted that any settlement with the NYAG and receivers include a release by the Trustee so that Merkin could have "global peace". For many months, the parties attempted to negotiate such an arrangement but the Trustee was not interested. As a result, the Agreement was modified to provide that a release from the Trustee would not be required. Instead, it was agreed that a certain portion of the settlement funds would be, in effect, held in reserve to satisfy the Trustee's claims. If that "reserve" is not used up, the unused funds will be part of the large pool of money to be distributed to the Merkin investors. It is ironic that the Trustee should question this arrangement which is essentially for his benefit, and was required because of his intransigence.

5. Finally, Mr. Sheehan notes that under the Agreement Merkin will transfer certain investments to his wife which he says "potentially shields Merkin's assets from recovery…" That is highly misleading. As the Trustee well knows, in order to make this settlement possible Merkin is transferring certain illiquid assets he owns to his wife in exchange for her transferring to him cash of equivalent value. If that didn't happen Merkin would not have sufficient cash to fund this settlement. The transfer by Merkin to his wife was both necessary and appropriate and in no way affects Merkin's creditors.

6. Annexed hereto as Exhibit A is a letter dated November 10, 2009 responding to a November 10, 2009 letter sent by David Sheehan.

Dated: New York, NY
       March 5, 2013

>                            /s/David N. Ellenhorn
>                            David N. Ellenhorn

EXHIBIT A
to


**DECLARATION OF DAVID N. ELLENHORN
IN SUPPORT OF DEFENDANTS' JOINT
SUR-REPLY MEMORANDUM OF LAW
IN OPPOSITION TO TRUSTEE'S APPLICATION
FOR ENFORCEMENT OF AUTOMATIC STAY
AND ISSUANCE OF PRELIMINARY INJUNCTION**



| ANDREW M. CUOMO<br>Attorney General | STATE OF NEW YORK<br>OFFICE OF THE ATTORNEY GENERAL | ERIC CORNGOLD<br>Executive Deputy Attorney General<br>Division of Economic Justice |
|---|---|---|

DAVID A. MARKOWITZ
Bureau Chief
Investor Protection Bureau

November 10, 2009

<u>Via Email</u>

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

　　　　Re:  People v. J. Ezra Merkin, Gabriel Capital Corp. et al. (450879/2009)

Dear Mr. Sheehan:

　　　　Thank you for your letter of November 10. One important fact not addressed in your letter is that the Attorney General's suit is a police action concerning Merkin's separate fraud against his investors. Merkin misled his investors and claimed he was personally managing their money, which instead he turned over to Madoff. This significant fact distinguishes the Attorney General's action from many other feeder fund suits you have brought.

　　　　Madoff's fraud impacted the citizens of New York State, and we support the work of the Trustee concerning the Madoff fraud. I look forward to continuing our discussion toward a resolution on Thursday at 10 a.m.

　　　　　　　　　　　　　　　　　　　　Sincerely yours,

　　　　　　　　　　　　　　　　　　　　David Ellenhorn
　　　　　　　　　　　　　　　　　　　　Senior Trial Counsel