UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES INVESTOR PROTECTION      :
CORPORATION,
                                    :
        Plaintiff,                  :
                                    :          12 MC 115 (JSR)
            -v-                     :
                                    :          OPINION AND ORDER
BERNARD L. MADOFF INVESTMENT        :
SECURITIES LLC,                     :
                                    :
        Defendant.                  :
------------------------------------x
In re:                              :

                                    :
MADOFF SECURITIES                   :
------------------------------------x
PERTAINS TO THE FOLLOWING CASE:     :
------------------------------------x
IRVING H. PICARD,                   :

                                    :
        Plaintiff,                  :
                                    :
            -v-                     :          12 Civ. 6733 (JSR)
                                    :
ERIC T. SCHNEIDERMAN, as successor  :
to ANDREW M. CUOMO, Attorney General :
of the State of New York; BART M.   :
SCHWARTZ, as Receiver for ARIEL FUND :
LTD. and GABRIEL CAPITAL, L.P.;     :
DAVID PITOFSKY, as Receiver for     :
ASCOT PARTNERS, L.P. and ASCOT FUND, :
LTD.; J. EZRA MERKIN; and GABRIEL   :
CAPITAL CORPORATION,                :
                                    :
        Defendants.                 :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

        Irving H. Picard, the trustee appointed to administer the

bankruptcy estate of Bernard L. Madoff Investment Securities LLC

("Madoff Securities"), moves to preliminarily enjoin Eric T.

Schneiderman, the New York State Attorney General, from consummating

Schneiderman's $410 million settlement with alleged Madoff associate
J. Ezra Merkin and his companies.  The Trustee, however, having for
more than three years issued empty threats to seek a halt to the
Attorney General's suit, has lost his right to complain. Even on the
merits, moreover, his bluster proves to be without substance.
Accordingly, not only this motion but also this entire action
seeking to derail the Attorney General's settlement must be
dismissed.

By way of background, Ezra Merkin and Gabriel Capital Corp.
(together, the "Merkin defendants") managed several private
investment partnerships that invested in Madoff Securities,
including Ascot Partners, L.P. and Ascot Fund, Ltd. (together,
"Ascot"),[1] Ariel Fund Ltd., and Gabriel Capital, L.P. ("Gabriel
Fund," collectively with the other funds, the "Merkin Funds"). See
Decl. of David N. Ellenhorn ("Ellenhorn Decl.") ¶ 2, No. 12 Civ.
6733, ECF No. 15 (S.D.N.Y. filed Jan. 25, 2013). Over the course of
the life of the Funds, the Merkin defendants invested the vast
majority of Ascot's assets with Madoff Securities, while the Gabriel
and Ariel Funds invested less than thirty percent of their assets
with Madoff.  Id.

In December 2008, Madoff Securities was revealed to be a Ponzi
scheme, and Irving H. Picard (the "Trustee"), was shortly therefore
appointed trustee under the Securities Investor Protection Act

---

[1] Ascot Fund was subsumed by Ascot Partners in 2003.

("SIPA"), 15 U.S.C. § 78aaa et seq., to administer and liquidate the Madoff Securities estate. With the commencement of the liquidation, orders were entered on December 15 and 18, 2008, and February 9, 2009, that implemented the automatic stay for which both the Bankruptcy Code and SIPA provide. See 11 U.S.C. § 362; 15 U.S.C. § 78eee(b)(2)(B). These orders declared that "all persons and entities are stayed, enjoined and restrained from directly or indirectly . . . interfering with any assets or property owned, controlled or in the possession of [Madoff Securities.]" SEC v. Bernard L. Madoff, No. 08 Civ. 10791, ECF No. 4 (S.D.N.Y. Dec. 15, 2008).[2]

On April 6, 2009, the New York Attorney General ("NYAG") brought suit in New York State Supreme Court alleging that the Merkin defendants had violated New York's Martin Act, its Executive Law, and its Not-for-Profit Corporation Law, by making material misrepresentations and omissions to investors regarding, inter alia, the investment strategies Merkin intended to pursue, Merkin's role in managing the Merkin Funds' investments, and Merkin's intention to turn over substantially all of the funds to Madoff and other

---

[2] The December 18, 2008 Order similarly enjoined interference with "the assets subject to the receivership," see Order on Consent Imposing Preliminary Injunction Freezing Assets and Granting Other Relief Against Defendants at 9, No. 08 Civ. 10791, ECF No. 8 (S.D.N.Y. Dec. 18, 2008), and the February 9, 2009 Order incorporated and made permanent the December 18, 2008 order, see Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief at 4, No. 08 Civ. 10791, ECF No. 18 (S.D.N.Y. Feb. 9, 2009).

investment managers.  The NYAG also named the Merkin Funds as relief defendants. See People v. Merkin, No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 6, 2009).  On September 16, 2010, Bart Schwartz (the "Ariel and Gabriel Receiver"), who had been appointed receiver for the Ariel and Gabriel Funds, also filed suit in New York State Supreme Court, alleging on behalf of the Ariel and Gabriel Funds and their investors that, inter alia, the Merkin defendants violated their fiduciary duties of candor and disclosure, fraudulently concealed and misrepresented the involvement of various investment managers, and collected exorbitant fees. See Schwartz v. Merkin, No. 651516/2010 (N.Y. Sup. Ct. filed Sept. 16, 2010).

Meanwhile, on May 6, 2009 (i.e., after the commencement of the NYAG's suit but well before the commencement of the Ariel and Gabriel Receiver's suit), the Trustee commenced an adversary proceeding against the Merkin defendants and the Merkin funds, seeking return of transfers of alleged Madoff Securities customer funds as actual and constructive fraudulent conveyances pursuant to the Bankruptcy Code and New York Debtor-Creditor Law, the imposition of a constructive trust, and disallowance of claims. See Picard v. Merkin, Adv. Pro. No. 09-1182, ECF No. 1 (Bankr. S.D.N.Y. filed May 6, 2009). The Trustee alleged, in sum and substance, that Merkin, a sophisticated investment manager with close ties to Madoff, steered hundreds of millions of dollars from the Merkin Funds into Madoff Securities. In total, the Trustee sought $33 million from the Ariel and Gabriel funds and $460 million from Ascot and the Merkin

4

defendants. Although the Merkin Funds were "net losers" under the Trustee's net equity calculation - that is, they invested more principal in Madoff Securities than they withdrew over the life of their investment - the Trustee alleged that the Merkin defendants had knowledge of Madoff's scheme and therefore sought to recover the entire value of transfers received by the Merkin Funds within the applicable "claw-back" period.

Several years later, after considerable litigation, the NYAG and the Ariel and Gabriel Receiver, on June 13, 2012, executed a joint settlement of their claims with the Merkin defendants for $410 million, most of which was to be distributed to the Merkin Funds' investors. David Pitofsky (the "Ascot Receiver"), who had been appointed receiver for Ascot, participated in the settlement and agreed to release any claims that Ascot might have against the Merkin defendants.

On August 1, 2012, several weeks after the public announcement of the settlement, the Trustee filed the instant action against the NYAG, the Ariel and Gabriel Receiver, the Ascot Receiver, and the Merkin defendants, claiming that the June 2012 settlement violated the Bankruptcy Code's automatic stay, as well as the various stay orders entered in the Madoff Securities SIPA proceeding. By way of relief, the Trustee sought to have the NYAG's and Receiver's actions (and the resulting settlement) not only stayed but also declared void ab initio. The Trustee also moved to have consummation of the settlement agreement preliminarily enjoined under Section 105(a) of

the Bankruptcy Code pending resolution of the stay action.    On

December 27, 2012, on defendants' motion, this Court withdrew the

reference to the Bankruptcy Court on all issues in this action. See

Order, No. 12 Civ. 6733, ECF No. 14 (S.D.N.Y. filed Dec. 28, 2012).[3]

Thereafter, the Court received extensive briefing on the Trustee's

motion for a preliminary injunction and heard oral argument on March

25, 2013.

        In essence, the Trustee claims that the settlement funds are in

fact "stolen" customer property paid by Madoff Securities to the

Merkin Funds and then transferred to the Merkin defendants as fees

for Merkin's management of the Funds' investments with Madoff

Securities. Thus, the Trustee claims that the funds used to pay the

settlement are the same funds that the Trustee seeks to recover

through his fraudulent transfer action and therefore are properly

subject to the automatic stay and the Bankruptcy Court's

jurisdiction.

        Very similar arguments were recently rejected by Judge Marrero

in his persuasive opinion in Picard v. Fairfield Greenwich Ltd., No.

12 Civ. 9408, 2013 WL 1149933, at *11 (S.D.N.Y. Mar. 20, 2013), and

the Court finds them similarly unavailing here. But even before

reaching these arguments, the Court finds that the doctrine of

laches - which prohibits unreasonable, inexcusable and prejudicial

delay such as that engaged in by the Trustee here - provides a

---

[3] A Memorandum stating the reasons for the withdrawal will issue in
due course.

6

complete defense not only to the issuance of the preliminary injunction, which must therefore be denied, but to the entirety of the Trustee's action, which must therefore be dismissed.

As an initial matter, the Court finds that, contrary to defendants' suggestion, this case properly falls under the Court's bankruptcy jurisdiction under 28 U.S.C. § 1334(b), which grants to district courts jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." As the Second Circuit has stated, "the touchstone" for whether a case falls under a district court's bankruptcy jurisdiction is "whether its outcome might have <u>any conceivable effect</u> on the bankruptcy estate." <u>In re Quigley Co., Inc.</u>, 676 F.3d 45, 57 (2d Cir. 2012) (quoting <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 114 (2d Cir. 1992)) (emphasis added). The <u>Quigley</u> court found that "[a] suit against a third party alleging liability not derivative of the debtor's conduct but that nevertheless poses the specter of direct impact on the <u>res</u> of the bankrupt estate may just as surely impair the bankruptcy court's ability to make a fair distribution of the bankrupt's assets as a third-party suit alleging derivative liability." <u>Id.</u> at 57. Where, as here, a trustee seeks a preliminary injunction against a third-party action based on a claim that the action will dissipate assets properly belonging to the estate, bankruptcy jurisdiction is satisfied.  This remains true even if a court ultimately determines

that the property in issue is not property of the estate or that an injunction may not issue. See id. at 58 n.4.[4]

The Court turns next to the defendants' claim that the equitable doctrine of laches bars the Trustee's motion because the Trustee waited more than three years before attempting to enjoin the NYAG's and Receiver's actions against the Merkin defendants. "A party asserting a laches defense must show that the plaintiff has inexcusably slept on its rights so as to make a decree against the defendant unfair," and that the defendant "has been prejudiced by the plaintiff's unreasonable delay in bringing the action." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 132 (2d Cir. 2003) (per curiam) (quotation marks and alterations omitted); see also Bray v. City of New York, 346 F. Supp. 2d 480, 491 (S.D.N.Y. 2004) ("Where the non-movant raises a potentially meritorious laches defense, it is appropriate to consider that issue in the preliminary injunction context.").

The following facts are essentially undisputed. Although aware from the outset of the NYAG's action, which was publicly filed in April 2009, the Trustee sought no judicial action to stay the NYAG's

---

[4] The Receivers argue that, under the "Barton doctrine," this Court is deprived of subject matter jurisdiction as against them because the Trustee has not obtained leave to sue from the state court that appointed them as receivers. See Barton v. Barbour, 104 U.S. 126 (1881). Because this rule would not apply to bar the entire action – the Court could still properly exercise jurisdiction over the matter as it relates to the NYAG and the Merkin defendants – and because the Court dismisses the action against the defendants on other grounds, see infra, the Court need not reach the issue of whether the Barton doctrine applies to this case.

action until the filing of the instant action in August 2012, more than three years later. In November 2009, more than six months after the filing of the NYAG action, the Trustee informed the NYAG that he would seek to enjoin the NYAG action unless the NYAG agreed to turn over any recovery it obtained from the Merkin defendants. Ellenhorn Decl. ¶ 14; Supplemental Decl. of David J. Sheehan in Further Supp.of Injunction ("Supp. Sheehan Decl.") ¶ 9. In response, the NYAG wrote a letter to the Trustee explaining that the Attorney General believed (correctly, as it turned out, see infra) that the Trustee could not enjoin the NYAG's action. Id. Nonetheless, the NYAG then invited the Trustee to negotiate a resolution of this disagreement, but the Trustee failed to respond after preliminary discussions. Id. After this point, there was no contact between the NYAG and the Trustee for about a year, see Affirmation of Maria T. Vullo ¶¶ 2-3; Supp. Sheehan Decl. ¶ 16, and it was not until mid-2011 that the Trustee again threatened to sue to enjoin any settlement reached in the NYAG's action against the Merkin defendants – a threat that once again remained idle until the instant action. Ellenhorn Decl. ¶ 15. During this same time period, moreover, various private investors commenced several independent lawsuits and arbitrations against the Merkin Funds and the Merkin defendants, and the Trustee never attempted to stay these actions or, indeed, stay payment of the judgments obtained by these individuals. See Decl. of Andrew J. Levander ("Levander Decl.") ¶¶ 6-7.

9

Under these circumstances, the Trustee's argument that the NYAG and the Ariel and Gabriel Receivers proceeded "at their own peril" rings hollow, for it was far more reasonable for these parties to have concluded that the Trustee, for all his rhetoric, was not prepared to follow through on his threat to attempt to stay the NYAG's action. Indeed, from the outset, the NYAG had informed the Trustee of strong arguments against such a stay, such as the argument that the Merkin defendants' assets at issue in the NYAG's suit are not property of the Madoff Securities estate and the argument that the Bankruptcy Code explicitly exempts state regulatory actions from the coverage of the automatic stay. See 11 U.S.C. 362(b)(4). If the Trustee had believed that these arguments were invalid, the burden was on him to take action to enforce the stay, rather than permit the NYAG to litigate its case for years while the Trustee did nothing but mouth occasional threats.

The Trustee notes that it had engaged in settlement negotiations of its own fraudulent transfer claims with the Merkin defendants and the Funds over the same three-year time period and that the original draft of the settlement between the NYAG, the Receivers, and the Merkin defendants conditioned agreement on the Merkin defendants' and the Funds' receiving releases from the Trustee's claims – a condition that was not removed until the final settlement. See Supp. Sheehan Decl. ¶¶ 14-15, 17-18, 20; Decl. of Bart M. Schwartz ("Schwartz Decl.") ¶ 17, No. 12 Civ. 6733, ECF No. 16 (S.D.N.Y. filed Jan. 25, 2013). The Trustee argues that this

10

proposed condition supports his claim that he perceived no threat to the bankruptcy estate until learned he had been "cut out" of the final settlement agreement. See Supp. Sheehan Decl. ¶¶ 20-22; Ellenhorn Decl. ¶¶ 8-9. However, the mere fact that the defendants hoped to obtain "global peace" as part of their settlement with the NYAG and the Receivers in no way justifies the Trustee in allowing lawsuits he claims he had a right to stay at the outset to proceed apace for years, at great expense to all involved. Nor was the Trustee even involved more than sporadically and tangentially in the discussions that led to the defendants' settlement. See Levander Decl. ¶ 8-10; see also Harley-Davidson, Inc. v. O'Connell, 13 F. Supp. 2d 271 (N.D.N.Y. 1998) (finding that a party's involvement in settlement negotiations "must be continuous and bilaterally progressing, with a fair chance of success" in order to justify delay by that party). Moreover, it is undisputed that at no time during the settlement discussions did the parties reach an explicit agreement with the Trustee that they would not settle the NYAG's and Receiver's actions without the Trustee's involvement. See Decl. of David B. Pitofsky ¶¶ 5-7. Furthermore, in the underlying litigation of the NYAG action, summary judgment motions had been briefed and argued in 2011, see Ellenhorn Decl. ¶ 7; from that point, Merkin's assets were at risk of an adverse judgment and therefore might be made unavailable to the Trustee at any time, and the Trustee still failed to take any action for over a year. Thus, the Court rejects

11

the notion that the Trustee brought suit as soon as a risk to

Merkin's assets became imminent.

At bottom, the Trustee could have acted at any of a number of

points in the history of these cases to enforce the automatic stay:

when the Trustee filed his action against the Merkin defendants and

the Merkin funds in May 2009; when he first threatened to enjoin the

settlement in November 2009; or at any point throughout the course

of the NYAG's lengthy and highly public litigation against the

Merkin defendants. Instead, while bombastically threatening to

enjoin the NYAG's and Receiver's actions, the Trustee allowed these

cases to proceed for over three years before attempting to enforce

the automatic stay. It is clear, therefore, that the Trustee

unreasonably and inexcusably slept on his rights.

Even then, however, such a delay might be forgiven if it had

not caused prejudice to the defendants. But in fact, the prejudice

to the defendants here, to the investors in the Merkin Funds, and

even to the New York Supreme Court that managed the NYAG's case for

three years, cannot be overstated. The NYAG expended substantial

public resources and engaged in extensive investigation and

litigation in bringing its enforcement action against the Merkin

defendants: even before filing its case, attorneys from the NYAG's

office conducted interviews of investors, obtained sworn testimony

from Merkin and his employees, and reviewed thousands of documents.

Ellenhorn Decl. ¶ 3. The parties then engaged in years of

litigation, including briefing and arguing motions to dismiss and

12

motions for summary judgment and engaging in a year of discovery, at great expense to all involved. Id. ¶¶ 6-7. Throughout this time period, the NYAG and the Receivers responded to investor inquiries, confirming that a significant portion of any moneys obtained from Merkin would be returned to his investors. Schwartz Decl. ¶ 12. Thus, as many as hundreds of Merkin's investors - who have no ability to file claims in the Trustee's claims administration process as "indirect" customers of Madoff Securities - refrained from bringing their own actions against Merkin in reliance on the NYAG and Receiver actions. Id. ¶ 14. Declaring the NYAG's suit void ab initio at this point would effectively cause these investors to lose their claims, and all because the Trustee chose to wait so long before seeking to enforce the automatic stay.

Judge Marrero recently found in his closely analogous case that "[i]f the Trustee believed the assets of the Fairfield Defendants to be property of the [Madoff Securities] estate, he should have sought relief long ago rather than delaying more than four years only to file the Stay Application on the eve of settlement, resulting in enormous prejudice to the Injunction Defendants."). Fairfield Greenwich, 2013 WL 1149933, at *11. The same is true here. See also Matthews v. Rosene, 739 F.2d 249, 251 (7th Cir. 1984) (finding laches applied to attempt to enforce automatic stay where "Matthews unreasonably and inexcusably delayed asserting his claim against state court jurisdiction to the bankruptcy court" for 33 months, and

13

finding "that Rosene would be seriously prejudiced if the state court order is voided").

Accordingly, laches alone is sufficient to deny the instant motion – and, indeed, to dismiss the entire action (see infra). Independently, however, the Court finds that the Trustee is unable to satisfy the requirements for the imposition of the automatic stay against these actions or to otherwise meet the requirements for an injunction under Section 105(a) of the Bankruptcy Code.

Turning first to the automatic stay, the Trustee argues that even though the NYAG's and Receiver's actions against the Merkin defendants are third-party actions and therefore not brought directly against the debtor, they nonetheless violate the Bankruptcy Code's automatic stay of (i) all actions that seek "to recover a claim against the debtor," 11 U.S.C. § 362(a)(1); (ii) any attempt "to exercise control over property of the estate," 11 U.S.C. § 362(a)(3); and (iii) any attempt to "collect, assess, or recover a claim against the debtor," 11 U.S.C. § 362(a)(6). Because the automatic stay "protects only the debtor, property of the debtor or property of the estate," not "non-debtor parties or their property," Fairfield Greenwich, 2013 WL 1149933, at *2 (quoting Gross Found., Inc. v. Goldner, 12 Civ. 1496, 2012 WL 6021441, at *7 (E.D.N.Y. Dec.4, 2012)), the Trustee must show that the NYAG's and Receiver's claims or the property involved in the settlement were property of the debtor.

14

The Trustee argues that the claims brought by the NYAG and the Receivers are based on the same facts, seek the same funds from the same defendants, and are inextricably intertwined with the Trustee's claims. Therefore, according to the Trustee, the claims are derivative of the Trustee's claims and effectively belong to the Madoff Securities estate. However, the NYAG's and Receiver's actions relate to Merkin's fraud on his own investors – not Madoff's fraud at the expense of his customers – and therefore are independent claims based on separate facts, theories, and duties than the Trustee's fraudulent transfer claims against Merkin. Because the Trustee has no standing to bring claims on behalf of Merkin's investors, these claims do not properly belong to the Madoff Securities estate. Cf. Picard v. HSBC Bank PLC, 454 B.R. 25, 29 (S.D.N.Y. 2011) (finding that the Trustee does not have standing to assert claims against third parties on behalf of the estate's creditors).

The fact that the claims at issue here are based on an independent duty owed between Merkin and his investors distinguishes the NYAG's and the Receiver's actions from those actions enjoined by the Bankruptcy Court as violating the automatic stay in which the plaintiffs brought claims against third parties that were general to all creditors of the Madoff Securities estate. See, e.g., Picard v. Fox (In re Madoff), 848 F. Supp. 2d 469, 481 (S.D.N.Y. 2012) (distinguishing between generalized claims of all creditors, which can be enjoined, and claims by creditors against third parties that

15

owe a subset of creditors an independent fiduciary duty); Picard v.
Stahl (In re Bernard L. Madoff Inv. Sec. LLC), 11 Civ. 2392, 2011 WL
7975167, at *13 (S.D.N.Y. Dec. 15, 2011), aff'd, No. 11-5421, 2013
WL 616269 (2d Cir. Feb. 20, 2013) ("[W]e are dealing with alleged
misrepresentations and lies that every creditor of the estate
suffered. And rather than have a profusion of claims, it's the
rationale behind Section 362 and Section 105 to favor the
trustee.").   Moreover, the Bankruptcy Court has already determined
that Madoff Securities' indirect investors - investors in funds that
have customer accounts with Madoff Securities, like the investors in
the Merkin Funds - are not considered customers for purposes of
SIPA, see SIPC v. Bernard L. Madoff Inv. Secs. (In re Madoff), 454
B.R. 285 (Bankr. S.D.N.Y. 2011), aff'd, In re Aozora Bank Ltd., 2012
WL 28468 (S.D.N.Y. Jan. 4, 2012), implying that their claims are
separate from the claims of the Madoff Securities estate.

        Because the NYAG's and Receiver's actions are independent
claims against a non-debtor, the Trustee cannot seek application of
the automatic stay under Section 362(a)(1). See Variable-Parameter
Fixture Dev. Corp. v. Morpheus Lights, Inc., 945 F. Supp. 603, 608
(S.D.N.Y. 1996) ("'[W]here the non-debtor's liability rests upon his
own breach of duty,' a stay clearly cannot be extended to the non-
debtor." (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994,
999 (4th Cir. 1986))).   Nor does the rule articulated in In re
Colonial Realty Co., 980 F.2d 125, 131-32 (2d Cir. 1992) - that "a
third-party action to recover fraudulently transferred property is

                                    16

properly regarded as undertaken 'to recover a claim against the debtor'" - apply here, as the claims at issue here are not actions "to recover fraudulently transferred property," but rather independent claims for (primarily) breaches of the Merkin defendants fiduciary duties. As Judge Marrero noted in rejecting this same argument, the decision in In re Colonial was based on a unique set of facts unlike the facts at issue here, and "the rationale set forth in In re Colonial is inapplicable." Fairfield Greenwich, 2013 WL 1149933, at *5 ("[U]nlike in In re Colonial, the Anwar Plaintiffs' claims are in no way contingent on the Fairfield Defendants' possible liability to the [Madoff Securities] estate.").

As to Section 362(a)(3), the Trustee argues that the settlement "necessarily implicates" Madoff Securities' rights in property, see In re Adelphia Communications Corp., 2006 WL 1529357, at *3 (Bankr. S.D.N.Y. June 5, 2006), because the settlement seeks to exercise control over Merkin's assets, which consist of fraudulently transferred property of the Madoff Securities estate. Similarly under Section 326(a)(6), the Trustee claims that the NYAG and the Receiver are attempting to "recover a claim against the debtor" because the assets that both they and the Trustee seek are limited. Thus, according to the Trustee, payment of the $410 million settlement would significantly reduce and possibly exhaust the Merkin defendants' reachable assets, which would then be unrecoverable by the Trustee in his action. In essence, then, under both of these provisions, the Trustee argues that the settlement

will recover property of the estate in violation of the automatic

stay. See In re Saint Vincents Catholic Med. Centers of N.Y., 449

B.R. 209, 216-17 (S.D.N.Y. 2011) ("[P]roperty of the estate"

includes "[e]very conceivable interest of the debtor, future,

nonpossessory, contingent, speculative, and derivative.").

Assuming arguendo that the Trustee could establish that the

assets to be used for the settlement are property of the Madoff

Securities estate before that proposition is adjudicated in the

Trustee's fraudulent transfer action, the Trustee has failed to

sufficiently support that premise as a factual matter.[5] First, Merkin

made significant amounts of money from sources other than Madoff

Securities. For example, the majority of the assets invested in the

Ariel and Gabriel Funds was not invested with Madoff Securities, so

Merkin's management fees were not entirely derived from fraudulent

transfers from Madoff Securities. Proceeds from Merkin and his

wife's substantial art collection also make up a significant portion

of the funds to be used for the settlement, and the Trustee has not

shown that the works in this collection were purchased with

fraudulently transferred funds. See Ellenhorn Decl. ¶ 12. Thus, it

is not clear that the funds to be used for the settlement are the

proceeds of fraudulent transfers from Madoff Securities and

---

[5] As discussed infra, the facts here needed to support a preliminary
injunction are essentially the same facts needed to support the
Trustee's ultimate claims for relief, so that a failure to adduce
such facts is fatal not only to the motion for a preliminary
injunction but also to the Trustee's action as a whole.

therefore recoverable under the Trustee's fraudulent transfer
action.

     This stands in contrast to the factual background of the Second
Circuit's recent decision to uphold a Section 105(a) injunction
barring a suit by creditors of the Madoff Securities estate against
Bernard Madoff's relatives and employees, where the defendants'
"every asset (or the vast majority thereof) is claimed by the
Trustee as a fraudulent transfer from [Madoff Securities]," so the
third-party actions "would draw down assets almost all of which
could otherwise be expected to return to the [Madoff Securities]
estate as a consequence of the Trustee's fraudulent transfer
action." Stahl v. Picard (In re Bernard L. Madoff Inv. Sec., LLC),
No. 11-5421, 2013 WL 616269, at *2 (2d Cir. Feb. 20, 2013).

     Moreover, the Trustee has failed to show by more than
conclusory and speculative assertions that, if the settlement goes
forward, the Merkin defendants would be unable to pay any fraudulent
transfer judgment obtained by the Trustee.  The Ariel and Gabriel
funds each have approximately $500 million in remaining non-Madoff
assets, so it is unlikely that they would be unable to pay any
fraudulent transfer judgment against them, as only approximately $33
million is being sought by the Trustee.  As to Ascot, the NYAG
settlement provides for a hold-back for potential recovery by the
Trustee, so the defendants claim that there is little, if any, risk
that there will be insufficient funds to pay the Trustee should he
prevail on his avoidance actions.

Looking forward to how the Trustee's avoidance and recovery proceedings may unfold, the Merkin defendants further argue that the Gabriel and Ariel Funds will be recipients of tens of millions of dollars in distributions from the Trustee in excess of the recovery the Trustee seeks once the Funds pay any fraudulent conveyance judgment against them and are eligible to receive their net equity claims through the Trustee's claims administration process. Similarly, the Merkin defendants argue that the claims against Ascot, though far more substantial, will be offset by net equity distributions either in full or with the Trustee recovering in the end only slightly more than Ascot will receive back in distributions. Although the Trustee contests the legal basis for this calculation as well as the contingent nature of the defendants' claimed recovery, the fact remains that the Trustee has set forth no stronger factual basis for his claim that the defendants will be unable to pay the Trustee's claims. Since it is the Trustee's burden to show that the settlement will "necessarily implicate" property of the estate, the failure to present a factual basis for this claim is fatal to the Trustee's argument.  Accordingly, even if the Court were not to find that the Trustee's action is barred by laches, the Court would also conclude that the Trustee has not sufficiently shown that property of the debtor is at risk in this action to justify applying the automatic stay and declaring the NYAG's and Receiver's void ab initio. This, again, supplies an independent

basis not only for denying the junction but also for dismissing the action.

Even if all the above were not so, moreover, the Trustee has still failed to satisfy the requirements for a preliminary injunction. Section 105(a) of the Bankruptcy Code authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a); see also 15 U.S.C. 78fff(b) (applying Section 105(a) in SIPA liquidations). Although "section 105 grants broader authority than section 362," In re Calpine Corp., 365 B.R. 401, 413 n.20 (S.D.N.Y. 2007)), nonetheless, Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010) (quoting In re Dairy Mart Convenience Stores, Inc., 351 F.3d 86, 92 (2d Cir. 2003)).

The parties dispute what standard applies to a Section 105(a) injunction: whether, as defendants argue, the Trustee must meet the full requirements for an injunction under Rule 65 of the Federal Rules of Civil Procedure, as incorporated into bankruptcy proceedings by Bankruptcy Rule 7065, which require the Trustee to demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the

preliminary relief," Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quotation marks omitted); or whether, as the Trustee claims, the Trustee need only show that the injunction against the third-party action "plays an important part in the debtor's reorganization plan," SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.), 960 F.2d 285, 293 (2d Cir.1992), or that the action to be enjoined "will have an immediate adverse economic consequence for the debtor's estate," Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir.2003).

The Court need not decide which standard applies, however, as the Trustee has failed to satisfy the requirements of either standard.[6] Even assuming the Trustee is correct that the Madoff Securities estate gets first priority on recovery from a non-debtor - a premise that the Court strongly doubts - the Trustee has failed to show that the estate's fraudulent transfer claims would be unable to be satisfied if the settlement goes forward, as discussed above.

---

[6] Because the Court finds that a preliminary injunction is not warranted, the Court does not consider whether such an injunction would contravene the Supreme Court's decision in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), prohibiting pre-judgment injunctions against transfers of assets in lawsuits for money damages. Nor does the Court need to reach the question of whether the NYAG's action is exempt from the automatic stay under the exemption for exercises of governmental police power. See 11 U.S.C. § 362(b)(4) (providing that the filing of a bankruptcy proceeding does not operate as a stay against "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in [such] an action").

22

Since the Trustee would be able to recover any property deemed to be property of the estate in the fraudulent transfer action, the Trustee has failed to demonstrate either that the Madoff Securities estate would suffer irreparable harm under the traditional test for an injunction or that allowing the settlement to go forward would "have an immediate adverse economic consequence" on the Madoff Securities estate under the Trustee's preferred, bankruptcy-specific test.[7] See In re Granite Partners, L.P., 194 B.R. 318, 338 (Bankr. S.D.N.Y. 1996) (refusing to grant a Section 105(a) injunction where the Trustee states "in conclusory terms, that the estates will suffer irreparable injury because the third party lawsuits will deplete estate assets [and] potentially prejudice subsequent lawsuits"). Thus, in addition to the Court's laches finding, because the Trustee fails to meet these threshold requirements, the Court denies the Trustee's motion for a preliminary injunction.

Moreover, the Court notes that the Trustee's invocation of a "race to the courthouse" in contravention of SIPA's statutory scheme of equitable distribution is misplaced in this case. Because the Trustee has failed to show a likelihood of interference with property of the debtor, the assets that the parties are racing to obtain are merely Merkin's funds - not Madoff's - and SIPA only concerns itself in this case with the property of the Madoff Securities estate. Unlike in Fox, the independent claims at issue in

---

[7] The Trustee makes no attempt to show that this injunction "plays an important part in the debtor's reorganization plan," as the Madoff Securities proceeding is a liquidation, not a reorganization.

23

the settled actions are not "so closely related" to those belonging
to the estate that the settlement risks "convert[ing] the bankruptcy
proceeding into a race to the courthouse [that] would derail the
bankruptcy proceedings." 848 F. Supp. 2d at 487 (internal quotation
marks omitted); see also Fairfield Greenwich, 2013 WL 1149933, at
*8-9 & n.8.

Finally, the Trustee argues that allowing the settlement to go
forward – and therefore, according to the Trustee, depleting the
pool of assets available for the Trustee's recovery of fraudulent
transfers – would impermissibly elevate the NYAG's and Receiver's
state law claims over the Trustee's federal statutory claims.
Therefore, the Trustee claims that the NYAG's and Receiver's claims
are preempted as an impediment to Congress's mandate in SIPA that
customers of failed brokerage houses would receive first priority in
the distribution of customer property and recoup their losses on a
pro rata basis. See SIPA § 78lll(11).

"Where a federal law treads on a traditional state power, [the]
presumption [against preemption] is especially strong, and is
overcome only where the statute evidences that preemption is the
clear and manifest purpose of Congress." Disney Enterprises, Inc. v.
Tax Appeals Tribunal of State, 10 N.Y.3d 392, 403 (2008). Here, as
defendants note, the opposite intention is manifest, as Congress
explicitly exempted state regulatory actions from the coverage of
Section 362's automatic stay. See 11 U.S.C. § 362(b)(4). Moreover,
SIPA does not give the Trustee super-creditor status as against a

24

non-debtor over independent claims asserted against that non-debtor.

As the court stated in Fairfield Greenwich,

> The Trustee's claim that [Madoff Securities] customers
> should get the first bite at the [] Defendants' assets
> because "Congress gave 'customers' higher priority than
> other potential claimants" distorts the underlying
> issue: the [] Plaintiffs are not claimants, creditors,
> or customers of the [Madoff Securities] estate, but
> rather independent plaintiffs bringing direct federal
> and state causes of action against a non-debtor third
> party alleging claims that the Trustee cannot bring.

2013 WL 1149933, at *10. Given that there is no evidence that

Congress intended to preempt the independent state law causes of

action brought in this case through enactment of SIPA, the Court

concludes that SIPA does not preempt the NYAG's and Receiver's

claims in this case.

Accordingly, because the Court finds that the Trustee's claim

to any relief under the automatic stay is barred by the doctrine of

laches, and, independently, because the Court also finds that the

Trustee's claims have no basis in law, the Court not only denies

this motion for a preliminary injunction, but also, sua sponte

dismisses the entire stay action. Cf. Matthews, 739 F.2d at 251

(finding that even a violation of the automatic stay would be

excused because a court exercising bankruptcy jurisdiction, "as a

court of equity, nevertheless must be guided by equitable principles

in exercising its jurisdiction"). The Clerk of the Court is directed

to enter final judgment dismissing the Complaint with prejudice and

close item number 1 on the docket of 12 Civ. 6733.

SO ORDERED.

Dated: New York, NY
April 15, 2013

JED S. RAKOFF, U.S.D.J.